**SHARPE REFRIGERATION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–318C.**

United States Court of Federal Claims.

March 22, 1994.

Howell R. Riggs, Jr., Orange Beach, AL, for plaintiff.

Lisa B. Donis, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. Major Joseph Batey, Air Force Legal Services, of counsel.

## ORDER

NETTESHEIM, Judge.

This matter is before the court on defendant's motion for summary judgment pursuant to RCFC 56(b). The issue to be decided is whether the interpretation of the contract that forms the basis of plaintiff's claim is sufficiently contrary to the unambiguous language of the contract that defendant is entitled to judgment as a matter of law. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed. On March 26, 1991, the United States Air Force (the "Air Force") issued Request for Proposal No. F41689–91–R–0023 for the repair and maintenance of refrigeration and heating, ventilation, and air conditioning ("HVAC") systems at numerous military commissaries in the southern United States. The solicitation treated work on the refrigeration systems and the HVAC systems as separate items. The work for each of these systems was divided further into two phases: initial repair service and periodic preventive maintenance ("PPM") to be performed once the initial repairs were complete.

The description of the specific tasks to be performed under the contract was listed under section C–5 of the Statement of Work. A detailed list of tasks was included in the initial repair service phase of this section. These tasks were listed separately for the refrigeration systems (item 5.4.1) and for the HVAC systems (item 5.4.2). A similar list was included for PPM work for the refrigeration systems (item 5.5) and the HVAC systems (item 5.6). Item 5.11, "MONTHLY SERVICE PRIOR TO COMPLETION OF INITIAL REPAIRS," included two subitems that described the scope of emergency services for refrigeration initial repair (item 5.11.1) and HVAC initial repair (item 5.11.2).

At a pre-proposal conference conducted by the Air Force on April 18, 1991, a potential bidder asked for clarification regarding how emergency work was to be billed under the contract. The contracting officer's oral response, which was reiterated in a letter dated April 24, 1991, to all potential offerors, follows:

> The awarded price for initial repair service will include on-call emergency service work of the type specified in C.11. This coverage shall be in effect until the start of the calendar month following government acceptance.

The minutes of this meeting, also sent to the offerors, confirm that "the responsibility of the contractor to provide emergency services during the initial repair period without com-

pensation" was an area of concern expressed at the meeting.

In response to this concern, the contracting officer issued Amendment No. 0002 on April 29, 1991. This amendment changed item 5.11 of the solicitation, entitled "EMERGENCY SERVICE CALLS PRIOR TO COMPLETION OF INITIAL REPAIR" by including the explanation: "Emergency service prior to completion of initial repair as described below shall be considered as part of the initial repair work." The scope of the emergency repair obligations for refrigeration initial repair (item 5.11.1) and HVAC initial repair (item 5.11.2) were listed directly below this item.

Sharpe Refrigeration, Inc. ("plaintiff"), received the initial solicitation, as well as Amendment No. 0002. Although plaintiff did not attend the April 18, 1991 meeting, the contracting officer did send a copy of the meeting minutes and questions/answers to plaintiff by letter dated April 24, 1991. On July 1, 1991, plaintiff responded to the contracting officer's request for additional technical information and attached an addendum to its original acknowledgment of Job/SOW (statement of work) requirements. Plaintiff's addendum begins by stating that "[t]he contractor ... [has] a working knowledge of all paragraphs of sections C–1 through C–3, and C–5 of the PWS." The addendum lists provisions of section C–5, followed by notations listed under the heading "Contractor's Expanded Statements." The notation following paragraph 5.11 reads: "Contractor understands the content of these paragraphs."

On August 13, 1991, plaintiff was awarded contract F41689–91–D–1007. A Notice to Proceed was issued on August 7, 1991, requiring plaintiff to begin initial repair work no later than September 7, 1991, with a completion date of October 21, 1991. The contracting officer accepted the initial repair work on November 29, 1991, allowing plaintiff to invoice for the initial repair services. Included in the invoices submitted by plaintiff were invoices for emergency repair services and preventive maintenance performed at the various contract sites. In an undated letter, the contracting officer returned the invoices for emergency repair services and preventive maintenance unpaid, asserting that "in accordance with Section C, para 5.11, emergency work performed prior to completion of initial repair work shall be considered as part of the initial repair work. . . ."

In April 1992 plaintiff submitted a certified claim to the contracting officer for $131,-859.80, representing emergency work performed during the initial repair phase of the contract. The contracting officer denied this claim on May 18, 1992, explaining that plaintiff's interpretation of the contract to include separate payment for emergency services during the initial repair period "directly conflicts with provisions in the contract as well as completely ignoring an answer furnished as part of the preproposal conference minutes. . . ." Following the denial, plaintiff filed suit in the United States Court of Federal Claims on May 18, 1993, claiming $131,-859.80 for the emergency work performed under the contract.

In its motion for summary judgment, defendant asserts that the unambiguous language of the contract, as amended, mandates that emergency repair services performed during the initial repair phase be included as part of the initial repair services portion of the contract. Moreover, the contracting officer informed plaintiff prior to the contract award that emergency services would be considered part of the initial repair work. Since the provision upon which plaintiff sues is unambiguous, defendant asks for judgment as a matter of law.

Plaintiff responds that, in context, the contract language was ambiguous. Plaintiff understood that the Government was more concerned with delay in payment problems and, as a result, did not interpret the contract to require combining emergency initial repair and emergency repair pricing. Plaintiff acknowledges that it knew of the emergency repair payment issue raised at the April 18, 1991 meeting, as well as the language contained in Amendment No. 0002. Plaintiff asserts, nonetheless, that the contract was ambiguous because "defendant focused on 'responsibility' for work and the contractor focused on the manner of the 'delayed' payment. . . ." Plf's Br. filed Feb. 25, 1994, at 8.

## DISCUSSION

█ Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Interpretation of an unambiguous contract provision is a matter of law. *American Medical Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1533 (Fed.Cir.1993). The court's first duty in construing disputed contractual provisions is to " 'ascertain analytically whether *vel non* an ambiguity existed' " in the language of the contract. *John C. Grimberg Co. v. United States*, 7 Cl.Ct. 452, 456 (1985) (quoting *Enrico Roman, Inc. v. United States*, 2 Cl.Ct. 104, 106 (1983)), *aff'd mem.*, 785 F.2d 325 (Fed.Cir.1985) (Table). An interpretation giving reasonable meaning to all parts of a contract will be endorsed over one that leaves portions of the contract meaningless. *Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed.Cir.1985). The Federal Circuit recently instructed that the first priority in a contract dispute is to resolve the matter employing a plain meaning interpretation. *Aleman Food Serv., Inc. v. United States*, 994 F.2d 819, 822 (Fed.Cir. 1993). A party's subjective, unexpressed intent plays no role in interpreting a contract. *See ITT Arctic Serv., Inc. v. United States*, 524 F.2d 680, 684, 207 Ct.Cl. 743, 752 (1975) (citing cases).

In its opposition to defendant's motion for summary judgment, plaintiff submitted an affidavit of its president, William C. Sharpe, dated February 18, 1994, which sets forth plaintiff's interpretation of the contract provisions. The court has given thorough consideration to the points raised in Mr. Sharpe's affidavit and, in ruling on this motion, has drawn all reasonable inferences therefrom in plaintiff's favor. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

█ Mr. Sharpe cites a subsequent solicitation issued by the Air Force as proof that the original solicitation was ambiguous. The subsequent solicitation contains an additional contract item 5.11.3, which reads: "Offerors [sic] prices must include emergency service calls. Utilize the workload estimates provided in Technical Exhibit 2 when combining prices for initial repairs and emergency service during the initial repair period."

Although this language does clarify the original solicitation, it does not indicate that the original solicitation was ambiguous. The response of the contracting officer during the April 18, 1991 meeting, as well as Amendment No. 0002, made the contractor's obligations under the contract abundantly clear. Defendant correctly cites *Sylvania Electric Products, Inc. v. United States*, 458 F.2d 994, 1007, 198 Ct.Cl. 106, 131 (1972), for the proposition that official statements made to clarify contract language during pre-bid conferences should be used in resolving contract interpretation questions. Although the revised solicitation resolves up front the matters raised in the pre-bid conference conducted in respect of this contract, any potential ambiguity in this case was stillborn when the contracting officer issued his response to the request for clarification and the amendment to the contract.

█ Plaintiff claims that its interpretation of the contract is reasonable when viewed in context, but a contextual evaluation of the contract yields the opposite conclusion. The unambiguous language of the contract, as amended, establishes that emergency services performed during the initial repair phase of the contract are to be included as part of the initial repair services. Plaintiff does not deny knowledge of the language. Rather, it asserts that it reasonably interpreted the contract to provide for separate compensation for emergency services. The court cannot give credence to a subjective interpretation that so blatantly contradicts the contract's plain language. Accordingly, the plain language of the amended contract entitles defendant to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**